RICKY EUGENE DAVIS, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 13972

January 20, 1983                                    656 P.2d 855

*Thomas E. Perkins,* State Public Defender, *Robert A. Bork* and *Kenneth V. Ward,* Deputy Public Defenders, Carson City, for Appellant.

*Brian McKay,* Attorney General, *Dan R. Reaser,* Deputy Attorney General, Carson City; *Virginia R. Shane,* District Attorney, *Jack T. Bullock, II,* Deputy District Attorney, Humboldt County, for Respondent.

## OPINION

*Per Curiam:*

Ricky Eugene Davis was convicted of driving under the influence of intoxicating liquor when death results. NRS 484.3795. He claims that the district court erred in admitting the results of a blood alcohol test because he was not under arrest at the time the blood sample was taken. We do not agree. Substantial evidence supports the determination that Davis expressly consented to the taking of the blood sample. Accordingly, we affirm the judgment of the district court.

### THE FACTS

On August 15, 1981, Davis was driving a pickup truck on Interstate 80 east of Winnemucca with two passengers. He had been drinking, and was driving erratically. At one point the truck went into a skid and rolled over, injuring all three occupants. One passenger was pronounced dead on arrival at Humboldt County Hospital.

Soon after Davis arrived at the hospital, Officer Black of the Winnemucca Police Department[1] read to Davis portions of the Nevada implied consent law, informing him that if he refused to submit to a blood, breath, or urine test he would lose his license for one to three years. Davis did not have, and has never had, a driver's license. Although he was still somewhat intoxicated and distraught, Davis expressed his consent to a blood alcohol test and signed a consent form.

Later that evening, before the results of his blood test were known, Davis was arrested for felony drunk driving by Nevada Highway patrolman Massae, who had investigated the accident scene. Davis does not contest the existence of probable cause for the arrest.

His blood test revealed that he had a blood alcohol level of .31, and Davis was convicted of driving under the influence of intoxicating liquor when death results. This appeal followed.

---

[1]Officer Black was involved in the investigation because he had investigated an earlier accident in Winnemucca involving the same vehicle.

## EXPRESS CONSENT AUTHORIZED THE "SEARCH"

By its terms, Nevada's implied consent statute[2] becomes operative in only two situations: when a driver is arrested, or when a driver is dead, unconscious, or otherwise in a condition rendering him incapable of being arrested. However, nothing in the statute indicates that it prevents a conscious driver who is not under arrest from providing valid consent to a blood alcohol test, and we shall not construe the statute to impose such a bar. *Cf.* Galvan v. State, 98 Nev. 550, 655 P.2d 155 (1982) (we shall construe our implied consent statute liberally to promote the legislative policy of removing intoxicated drivers from our state's highways). If a driver expressly and voluntarily consents to submit to a blood alcohol test, the test results are admissible not because of the implied consent law, but because of his express consent. State v. Kirkaldie, 587 P.2d 1298 (Mont. 1978). *See* State v. Wetherell, 514 P.2d 1069, 1072-73 (Wash. 1973). *See also* People v. Superior Court of Kern County, 493 P.2d 1145, 1147 (Cal. 1972).

Consent exempts a search from the probable cause and warrant requirements of the Fourth and Fourteenth Amendments. To be valid, however, consent must be voluntarily given and not the product of coercion, either express or implied; voluntariness is a question of fact to be determined from the totality of the surrounding circumstances. Schneckloth v. Bustamonte, 412 U.S. 218, 248-49 (1973); Cuellar v. State, 96 Nev. 68, 605 P.2d 207 (1980); Sparkman v. State, 95 Nev. 76, 590 P.2d 151 (1979).

Substantial evidence supports the finding of the district judge

---

[2]NRS 484.383 provides in relevant part as follows:

1. Except as provided in subsections 4 and 5, any person who drives a vehicle upon a highway in this state shall be deemed to have given his consent to a chemical test of his blood, urine, breath or other bodily substance for the purpose of determining the alcoholic content of his blood or the presence of a controlled substance when such a test is administered at the direction of a police officer having reasonable grounds to believe that the person to be tested was driving a vehicle while under the influence of intoxicating liquor or a controlled substance and:

(a) After he was arrested for any offense allegedly committed while he was driving a vehicle under the influence of intoxicating liquor or a controlled substance; or

(b) He is dead, unconscious or otherwise in a condition rendering him incapable of being arrested.

at the suppression hearing, and the implied finding of the trial court, that Davis' consent was freely and voluntarily given. Davis orally manifested his consent when the police officer asked if he would submit to a blood test. Moreover, when the medical technologist explained the procedure and the reason for it to Davis, he said that he understood the consent form and asked for a pen with which to sign it. Although the officer told Davis that he would lose his license for one to three years if he refused, Davis did not have a license to forfeit, and was thus immune to pressure under the implied consent law.

Since we hold that substantial evidence supports the district court's finding of express and voluntary consent, we need not discuss the State's suggestion that an arrest is not necessary under NRS 484.383 when probable cause to arrest exists at the time the sample is taken. As there was neither a violation of NRS 484.383 nor constitutional infirmity in admitting the blood test results at trial, we affirm the judgment of the district court.