CHARLES ALAN SCHROEDER, APPELLANT, v. THE STATE OF NEVADA, DEPARTMENT OF MOTOR VEHICLES AND PUBLIC SAFETY, RESPONDENT.

No. 18710

April 25, 1989                                772 P.2d 1278

---

*Beckley, Singleton, DeLanoy, Jemison & List,* and *Daniel F. Polsenberg,* Las Vegas, for Appellant.

*Brian McKay,* Attorney General, Carson City, and *Neil H. Friedman,* Deputy Attorney General, Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

After Nevada State Trooper Donald Fazio arrested him for driving under the influence of alcohol, appellant Charles Schroeder refused to submit to a chemical sobriety test for at least forty minutes. Schroeder told the arresting officer that he would not take any test until he spoke with his attorney. After the trooper left Schroeder in the Clark County jail and returned to his patrol, Schroeder changed his mind and requested a test. The police officer present refused to administer the test to Schroeder, and pursuant to Nevada's implied consent law, the department of motor vehicles revoked his driving privileges. A hearing officer affirmed the department's decision, and the district court denied Schroeder's petition for judicial review.

Schroeder argues that the arresting officer confused him as to his right to consult counsel before submitting to a chemical sobriety test. Therefore, he contends that he did not actually refuse to take the required test. Moreover, Schroeder claims that his eventual consent to take the test vitiated his prior refusals.

Finally, Schroeder argues that the State violated his due process right to collect evidence by preventing him from obtaining an independently administered chemical sobriety test. None of Schroeder's contentions have merit.

Schroeder argues that because of Fazio's "confusing" rendition of the implied consent law and the *Miranda* warnings, he believed that he had a right to consult his attorney before submitting to a chemical sobriety test. Therefore, under these circumstances, Schroeder claims that equity and good conscience demand that the State not revoke his license. We disagree.

This court construes Nevada's implied consent law liberally in order to further the legislative policy of removing intoxicated drivers from our highways. Davis v. State, 99 Nev. 25, 27, 656 P.2d 855, 856 (1983). In the instant case, the admonition regarding submission to a chemical test which Fazio read to Schroeder was a summary of the provisions contained within NRS 484.382-484.384. Nothing in the statutes directs law enforcement officers to provide drunk driving suspects with a proviso on the absence of a right to consult an attorney prior to taking a test. Therefore, Trooper Fazio gave Schroeder a reasonable version of his rights and obligations under the implied consent law.

Moreover, at Schroeder's hearing, Trooper Fazio testified that after appellant failed most of the field sobriety tests, he read the implied consent law warnings to Schroeder. Schroeder responded that he wanted to speak with an attorney before submitting to a chemical sobriety test. Because the right to counsel does not attach in implied consent situations, any response conditioned upon obtaining the advice of an attorney amounts to a refusal to take the test. McCharles v. State, DMV, 99 Nev. 831, 834, 673 P.2d 488, 490 (1983). Only after that exchange did Fazio inform Schroeder of his *Miranda* rights. Thus, the evidence indicates that Schroeder's refusal to take a test was not the result of any commingling of the implied consent law warnings and a recitation of Schroeder's *Miranda* rights.

Furthermore, once at the Clark County jail, Fazio specifically explained to Schroeder that in Nevada, implied consent "has nothing to do with seeing an attorney," but rather that "it was for the revocation of his driving privilege." Schroeder again refused to submit to a test, stating that he wanted to speak with a lawyer. Therefore, Fazio effectively resolved any possible confusion that may have existed in Schroeder's mind regarding his right to consult an attorney before taking a chemical sobriety test. Nevertheless, for a second time, Schroeder refused the test. Accord-

ingly, the record does not support Schroeder's claim that he was confused as to his right to consult his attorney prior to submitting to the test.

After Trooper Fazio returned to his patrol, Schroeder changed his mind and told another officer on duty in the jail that he wanted to take a chemical sobriety test. However, the officer refused to give the test to Schroeder. Schroeder argues that his eventual consent to a blood-alcohol test constituted a retraction of his earlier refusal, and therefore, the State should not have revoked his driving privileges. Schroeder's claim lacks merit.

Other states hold that an initial refusal to take a chemical sobriety test is final, and thus, the accused has no right to "cure" the original refusal. State v. Corrado, 446 A.2d 1229, 1232 (N.J.Super.Ct.App.Div. 1982). We cannot reasonably expect the arresting officer to consider a refusal as conditional, one that could be withdrawn at any time, and compel him to remain near the arrested person for an extended period of time. People v. Shorkey, 321 N.E.2d 46, 48 (Ill.App.Ct. 1974). Even if the facilities to conduct a test were still available, it would be inconsistent with the purpose of the implied consent statutes to require law enforcement officers to drop other responsibilities and arrange for a belated test which the defendant already refused after receiving warnings of the consequences of his noncompliance. Zidell v. Bright, 71 Cal.Rptr. 111 (Cal.Ct.App. 1968).

One immediate purpose of the implied consent statutes is to obtain the best evidence of a suspect's blood alcohol content at the time when the arresting officer reasonably believes him to be driving under the influence. Id. at 113. The statutes contemplate that police officers administer the tests without unreasonable delay because the effectiveness and reliability of a breathalyzer as well as a blood test decline with the passage of time. Harlan v. State, 308 A.2d 856, 858 (N.H. 1973). Therefore, no sound reason exists to give a driver the opportunity to delay a test to his benefit, and which would be contrary to the implied consent statutes' purpose of obtaining an accurate indication of his condition. Id.

One who is lawfully under arrest for drunk driving should not be able to defeat the purpose of the implied consent statutes by being uncooperative with the arresting officers. Noll v. Department of Motor Vehicles, 178 Cal.Rptr. 5, 7 (Cal.Ct.App. 1981). In the instant case, given Nevada's longstanding policy of removing intoxicated drivers from our highways, we reject Schroeder's contention that his eventual request to take a chemical sobriety test vitiated his prior refusals. Davis v. State, 99 Nev. 25, 27, 656 P.2d 855, 856 (1983).

Schroeder argues that the police's refusal to provide him with a chemical sobriety test after he eventually consented to one denied him his right to an independently administered test, and therefore, deprived him of due process. NRS 484.391. Specifically, Schroeder contends that the police intentionally frustrated his efforts to obtain an independently administered test, resulting in the loss of evidence that was material to his defense. Schroeder's contention lacks merit.

The record indicates that Schroeder never requested an independently administered test. Schroeder testified that when, in the Clark County jail, he eventually decided to submit to a test: "I looked around and I asked the officer closest to me on the right and told him, you know, I would like to take a test. *I would like to take your test* and he looked at me and said, 'I am sorry you can't take the test.'" (Emphasis added.) Thus, the police officer present would have reasonably interpreted Schroeder's request as one for a police administered blood-alcohol test. Therefore, as discussed above, the officer properly refused to provide the test.

The police must not hinder an individual's timely, reasonable attempts to obtain an independent examination, but they need not assist him. Com. v. Alano, 448 N.E.2d 1122, 1128 (Mass. 1983). In this case, nothing in the record suggests that the police obstructed Schroeder's right to acquire an independently administered chemical sobriety test. Therefore, the State did not deprive Schroeder of his due process right to obtain evidence.

Accordingly, we affirm the district court's denial of Schroeder's petition for judicial review.