23958

Joseph W. LEVINER, Jr., Appellant v. SOUTH CAROLINA DEPART-MENT OF HIGHWAYS AND PUBLIC TRANSPORTATION, a duly constituted agency of the State of South Carolina, Respondent.

(438 S.E. (2d) 246)

Supreme Court

*M. M. Weinberg, III*, of *Weinberg, Brown, McDougall,* and *McMillan*, Sumter, *for appellant.*

*Joseph H. Lumpkin, Jr., Asst. Chief Counsel*, of *S.C. Department of Highways and Public Transp.*, Columbia, *for respondent.*

Heard Oct. 20, 1993.

Decided Dec. 6, 1993. Reh. Den. Jan. 5, 1994.

HARWELL, Chief Justice:

Joseph W. Leviner, Jr. (Leviner) contends that the trial judge erred in ruling that an initial refusal to submit to a breathalyzer test is not cured or nullified by a subsequent request to take the test. We disagree and affirm.

## I. *Facts*

Leviner was arrested for driving under the influence by a South Carolina Highway Patrol Trooper and transported to the Sumter County Correctional Center to receive a breathalyzer test. While preparing to administer the test, a breathalyzer operator informed Leviner that this license would be suspended for ninety days if he refused to take the test. Despite this admonition, Leviner refused to take the test. Within fifteen minutes of his initial refusal, Leviner requested to be given the breathalyzer test. The arresting officer told Leviner that it was too late to take the test.

Thereafter, the South Carolina Department of Highways and Public Transportation (the Department) issued a notice of suspension of Leviner's diver's license based upon his refusal to take the breathalyzer test. *See* S.C. Code Ann. § 56-5-2950(d) (1991). Leviner requested an Administrative Hearing for the purpose of demonstrating that he did not refuse the breathalyzer test. Following a hearing, the Department sustained Leviner's driver's license suspension. The Court of Common Pleas affirmed and Leviner appealed.

## II. *Discussion*

Leviner contends that his subsequent request to take the breathalyzer test nullified or cured his initial refusal. We disagree.

The issue of whether there can be a cure or nullification of an initial refusal to submit to a breathalzyer test is one of first impression in this state. The majority of courts that have considered this issue have adopted a bright line rule which holds that the initial refusal to submit to testing cannot be cured or nullified by a subsequent agreement to be tested. *Webb v. Miller*, 187 Cal. App. (3d) 619, 232 Cal. Rptr. 50 (1986); *People v. Shorkey*, 23 Ill. App. (3d) 662, 321 N.E. (2d) 46 (1974);

*Krueger v. Fulton,* 169 N.W. (2d) 875 (Iowa 1969); *Nyflot v. Commissioner of Pub. Safety,* 369 N.W. (2d) 512 (Minn. 1985); *Johnson v. Division of Motor Vehicles,* 219 Mont. 310, 711 P. (2d) 815 (1985); *Wisch v. Jensen,* 221 Neb. 609, 379 N.W. (2d) 755 (1986); *Schroeder v. State,* 105 Nev. 179, 772 P. (2d) 1278 (1989) (per curiam); *Harlan v. State,* 113 N.H. 194, 308 A. (2d) 856 (1973); *State v. Corrado,* 184 N.J. Super. 561, 446 A. (2d) 1229 (Super. Ct. App. Div. 1982) (per curiam); *Commonwealth v. Stay,* 114 Pa. Commw. 532, 539 A. (2d) 57 (1988); *Peterson v. State,* 261 N.W. (2d) 405 (S.D. 1977); *Currier v. State,* 20 Wash. App. 16, 578 P. (2d) 1325 (1978).

Other jurisdictions have adopted a "flexible rule" that allows a subsequent consent to cure a prior refusal. *Gaunt v. Motor Vehicle Div.,* 136 Ariz. 424, 666 P. (2d) 524 (Ct. App. 1983); *Pruitt v. State,* 825 P. (2d) 887 (Alaska 1992); *Larmer v. State,* 522 So. (2d) 941 (Fla. Dist. Ct. App. 1988); *State v. Moore,* 62 Haw. 301, 614 P. (2d) 931 (1980); *Smith v. State,* 115 Idaho 808, 770 P. (2d) 817 (Ct. App. 1989); *Pickard v. State,* 572 So. (2d) 1098 (La. Ct. App. 1990); *Lund v. Hjelle,* 224 N.W. (2d) 552 (N.D. 1974). To be effective, the subsequent consent must be made:

(1) while the motorist is still in police custody,
(2) at a time when the police would not be unduly inconvenienced—for example, when the officer who would administer the test has become unavailable and,
(3) before the delay would materially affect the outcome of the test.

*Smith* at 811, 770 P. (2d) at 820. Other courts have adopted a similar five-element test which holds that subsequent consent can cure an initial refusal. *See Department of Public Safety v. Seay,* 206 Ga. App. 71, 424 S.E. (2d) 301 (1992); *Standish v. Department of Revenue,* 235 Kan. 900, 683 P. (2d) 1276 (1984); *Baldwin v. State,* 849 P. (2d) 1276 (1984); *Baldwin v. State,* 849 P. (2d) 400 (Okl. 1993).

Having studied the minority and majority views, we adopt the bright line rule. One immediate purpose of the implied consent statute is to obtain the best evidence of a driver's blood alcohol content at the time when the arresting officer reasonably believes him to be driving under the influence. *Schroeder v. State,* 105 Nev. 179, 182, 772 P. (2d)

1278, 1280 (1989) (per curiam). The bright line rule alleviates the concern that because the reliability of the test diminishes with the passage of time, allowing arrestees to delay their consent would enable them to manipulate their test results. *Id.* at 182, 772 P. (2d) at 1280. Additionally, it is unreasonable to expect an arresting officer to consider a refusal as conditional so that he must remain near the arrested person for an extended period of time. The arresting officer would be required to forsake other duties to arrange for a belated test that the motorist had already refused after receiving warnings of the consequences of his noncompliance.[1] *Id.* at 182, 772 P. (2d) at 1280.

Here, Leviner concedes that he initially refused to submit to a breathalyzer test after lawfully being requested to take it. Under the bright line rule we adopt today, our inquiry need go no further. The trial judge's ruling is

Affirmed.

CHANDLER, FINNEY and MOORE, JJ., and BRUCE LITTLEJOHN, Acting Associate Justice, concur.

---

[1] Law enforcement officers may be flexible and disregard a refusal which is promptly withdrawn. *See Mossak v. Commissioner of Public Safety*, 435 N.W. (2d) 578 (Minn. Ct. App. 1989). However, we find no basis to mandate such flexibility. *Id.*